
FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2009 MAR 30  AM 9: 55

CLERK _____
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

MADA PURDEE,                      )
                                 )
    Plaintiff,                   )
                                 )
v.                               )     CASE NO. CV407-028
                                 )
PILOT TRAVEL CENTERS, LLC,       )
                                 )
    Defendant.                   )
                                 )

## O R D E R

Before this Court are Defendant's Motion for Summary
Judgment (Doc. 98) and the accompanying Evidentiary Objections
(Docs. 120, 121 & 123). For the reasons that follow,
Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**. The
following claims are **DISMISSED**: (1) failure to promote, (2)
improper discharge, and (3) tortuous interference with a
contract. The following claims **REMAIN**: (1) discriminatory
demotion and (2) retaliatory discharge.

### BACKGROUND

Plaintiff Mada Purdee first became involved with Defendant
Pilot Travel Centers, LLC, in September 1995 as a managerial
trainee. By July 1, 1996, Plaintiff was a Pilot general
manager. Ms. Purdee performed well in that role. Indeed, she
became a general partner in 1997 and was later inducted into the

president's club. From 1996 to 2005, Ms. Purdee remained a general manager working at various Pilot Travel Centers.

Plaintiff first became involved with Pilot Store 71 ("the Store"), the store relevant to this litigation, on January 14, 2002, when she took the position of Store 71 general manager. The Store was a multifaceted business operation comprised of a Subway restaurant; a truck stop facility with showers, scales, gaming and ATM machines; a deli; a retail store; and gas and diesel stations, all of which were Ms. Purdee's responsibilities. The Store also housed a McDonald's, which was run by an outside entity.

Until late 2005, Plaintiff was the sole general manager of the Store, and had final decisional authority for the same.[1] While in control of the Store, Plaintiff performed her duties as general manager satisfactorily. (Doc. 106, Ex. 10, Wallis Aff. ¶ 22-28.) Ms. Purdee maintained a favorable profit margin, kept net-operating costs down, and had a low employee turnover rate, causing her store to compare favorably with others in the region. This is not to say Ms. Purdee was a perfect manager. At times she engaged in questionable conduct, including hiring

---

[1] Due to this matter being before the Court on Defendant's Motion for Summary Judgment, disputed facts are construed in the light most favorable to Plaintiff. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

her brother as lead maintenance man (Doc. 106 ¶ 17) and publicly admonishing employees (Doc. 101, Ex. 11, Noel Dep. at 154).

The situation at the Store began to deteriorate in the last quarter of 2004 when two changes in management occurred in the Southeastern Division of Pilot. That is, Mark Romano took over as Southeast Divisional Director and, soon thereafter, James Venable took over as Ms. Purdee's Regional Manager. Under the new management, the Store began to find itself in an untenable situation. The Store had significant management shortages, but was simultaneously required to take on the new responsibility of functioning as a Pilot manager training center. Further, for an unknown reason, Pilot shifted its accounting of a rent payment of $8,000 per month[2] from the corporate profit/loss statement to Ms. Purdee's profit/loss statement. (Doc. 125, Ex. 5, D02313-14.) This shift, along with other factors, resulted in the Store experiencing losses.

Apparently, the situation with the employees in the Store deteriorated as well. Accordingly, in June 2005, Pilot took a "cultural survey" of the employees at the Store. The survey produced poor results, leading to a roundtable discussion on August 9, 2005. Mr. Venable and David Ross (a human resources employee of Pilot) led the roundtable discussion, the sole

---

[2] This payment was being made to prevent the owner of a neighboring lot from selling that lot to a competitor.

purpose of which was to improve communication and morale in the Store. (Doc. 106, Ex. 13, Ross Dep. at 96-97.) Numerous employees attended the meeting; which resulted in only positive feedback about Ms. Purdee, despite attempts by Mr. Ross and Mr. Venable to elicit negative comments.[3] (Doc. 106, Ex. 32, Clifton Decl. ¶¶3-6; Doc. 106, Ex. 31, Ray Aff. ¶¶ 4-6; Doc. 106, Ex. 15, Web Aff. ¶¶ 5-6; Doc. 106, Ex. 21, Blair Aff. ¶¶ 4-6; Doc. 106, Ex. 35, Campbell Aff. ¶¶ 4-6.) The roundtable was a success for Ms. Purdee, causing Mr. Venable to conclude that "Mada [Purdee] is the person we want running the operation at #71 . . . ." (Doc. 125, Ex. 2, D00624, Memorandum Summarizing the Roundtable Meeting.)

Despite Mr. Venable's conclusion, Ms. Purdee would soon lose decisional control of Store 71 to David Knorr. Mr. Knorr applied to be a General Manager at Pilot in early 2005 and, as part of his hiring process, was given an "on-the-job preview" by Scott Wallis.[4] The preview raised serious concerns in Mr. Wallis about Mr. Knorr's attitude. Mr. Wallis also felt that Mr. Knorr did not have the proper prior work experience to be a Pilot

_____

[3] Pilot vigorously contests this accounting, but offers only Mr. Venable's and Mr. Ross's accounts to counter numerous affidavits by employees to the contrary. (See Doc. 123 at 22-23.)

[4] Scott Wallis was the General Manager of the Pilot Store in Brunswick, Georgia; a certified trainer for Pilot travel center general managers; and sometimes involved in hiring decisions. (Doc. 106, Ex. 10, Wallis Aff. ¶¶ 2-9.) Defendant has objected to this affidavit. (Doc. 121 at 13.) After careful consideration, Defendant's Objections are **OVERRULED**.

travel center general manager. Accordingly, Mr. Wallis recommended that the company decline to hire Mr. Knorr, a recommendation the company historically followed. (Doc. 106, Ex. 10, Wallis Aff. ¶¶ 14-15.) However, this time, the company ignored Mr. Wallis's advice and not only hired Mr. Knorr, but also placed him in a fast track program—a program for which he should have been ineligible. (Id. ¶ 17.) Mr. Knorr was then trained by Ms. Purdee at her Store.

As a part of Mr. Knorr's training, he was given sole responsibility for the Store from October 10, 2005 to October 23, 2005. Before this period was completed, on October 18, Mr. Romano and Mr. Venable informed Ms. Purdee that she was to be demoted to co-general manager, and that Mr. Knorr was to become the senior general manager.[5] As a result of the demotion, Mr.

---

[5]    Pilot disputes that Ms. Purdee was demoted. Instead, Pilot contends that any changes to Ms. Purdee's job were due to a new management structure Pilot implemented. Pilot apparently believes that this Court must accept its factual contentions because there is some evidence (the post-hoc testimony of Pilot executives) to support them.

Pilot's counsel apparently does not understand the standard for summary judgment; there is ample evidence to counter Pilot's factual assertion on this point, including the testimony of Mr. Knorr, Ms. Purdee, and several other employees. See infra Part II.B.1. Moreover, even the testimony of Pilot's executives casts doubt on the veracity of this explanation, admitting that this structure was, at the relevant time, implemented in only three stores nationally, and only Ms. Purdee's Store in the Southeast Region. (Doc. 106, Ex. 7, Romano Dep. at 34-35.) That is, the "company-wide" reorganization affected only three stores nationally. On summary judgment, the Court takes the facts in the light most favorable to the non-moving party, not

Knorr would have final decision making authority for the Store, hold the title of store director, and be the person to whom employees reported. (See Doc. 106, Ex. 15, Web Aff.; Doc. 106, Ex. 9, Crawford Aff.; Doc. 106, Ex. 35, Campbell Aff.) Further, Ms. Purdee would lose her general partnership in the near future, be moved from the day shift to the night shift, and report to Mr. Knorr rather than regional management. (See id.)

Ms. Purdee acted as the co-general manager until an incident on November 2, 2005. On that day, Ms. Purdee arrived at 5:00 AM, as scheduled, to complete preparations for an audit. Upon her arrival, she found the Store in total disrepair—out of both food and coffee, and staffed by a new, untrained employee. Moreover, Ms. Purdee soon learned that Mr. Knorr had forgotten to complete a necessary grocery order from a supplier the night before. When Mr. Knorr arrived later that morning, Ms. Purdee confronted Mr. Knorr about the state of the Store and the forgotten grocery order. Immediately after the altercation, Ms. Purdee called Mr. Ross and left a message complaining of gender discrimination. Then, later that morning, when Mr. Venable arrived for a scheduled visit, Ms. Purdee confronted him about Mr. Knorr, and informed Mr. Venable about the call to Mr. Ross. What happened next is hotly contested, but, taking Plaintiff's

_____

the light most favorable to moving party, the standard that Pilot's analysis implies. (See Docs. 99 & 122.)

version of the facts,[6] Ms. Purdee met with Mr. Venable who sent her home. (Doc. 106, Ex. 3, Purdee Dep. at 243-244.)

Later that afternoon, Ms. Purdee's call was returned by Mr. Ross, who told her that Ken Parent—Vice President of Operations— would call her when he returned from vacation. Then, on November 11, 2005, Ms. Purdee had a conference call with Mr. Ross and Mr. Parent. Ms. Purdee voiced her concerns about gender discrimination, with which Mr. Parent disagreed. The conversation ended with Mr. Parent offering Ms. Purdee the opportunity to accept the demotion and return to work. Apparently, Mr. Parent stated something to the effect of "if you don't want to come back as the co-general manager, then there is no position for you." (Id. at 247.) Ms. Purdee's response to this statement is not clear, but it appears she simply may not have responded. (Id.) What is clear is that she did not openly quit or decline to return to work during this phone call. (Doc. 106, Ex. 14, Parent Dep. at 58-59.) That same day, Ms. Purdee informed Pilot that she would return to work and accept the demotion. Pilot responded that Ms. Purdee had quit her job on November 2, 2005, and could not return. Then, on November 29,

---

[6] The Court notes that Defendant has filed countless evidentiary objections to Ms. Purdee's Affidavit, but none to Ms. Purdee's deposition testimony (except those actually made to questions during the deposition). (See Doc. 137.) As the Court has found it unnecessary to rely on Ms. Purdee's Affidavit in deciding this Motion, Defendant's Objections are **DISMISSED AS MOOT.**

2005, Pilot sent Ms. Purdee a separation notice. Subsequently, on February 23, 2007, Ms. Purdee filed this lawsuit.

**ANALYSIS**

## I. The Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the
> initial responsibility of informing the district
> court of the basis for its motion, and identifying

> those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

Here, Defendant has filed a number of evidentiary objections to Plaintiff's proof proffered in response to

Defendant's Motion.[7]  On a motion for summary judgment the Court "consider[s] only that evidence which can be reduced to an admissible form." Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th. Cir. 2005).  The Court has considered the objections and disregarded any inadmissible evidence.

## II.  Count One: Title VII—Individual Action

In the Complaint, Plaintiff asserts two claims under count one.  (Doc. 31 ¶¶ 104-106.)  That is, Plaintiff asserts a claim for discriminatory failure to promote and a claim for discriminatory demotion (adverse employment action).  For the reasons that follow, summary judgment on the claim for discriminatory failure to promote is **GRANTED**, and summary judgment on the claim for discriminatory demotion is **DENIED**.

### A.  The Failure to Promote Claim

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., prohibits an employer from refusing to hire, discharging, or otherwise discriminating against any individual "because of such individual's race, color, religion, sex or

---

[7] In addition, Defendant has filed a Motion to Strike the Expert Witness Report of Plaintiff's Expert based on both a violation of Fed. R. Civ. P. 26(a)(2) and Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993).  (Doc. 120.)  The Magistrate Judge denied the Rule 26 Motion and reserved the Daubert challenge to this Court.  (Doc. 160.)  The Court has not relied on the expert report in deciding this Motion, and, therefore, the reserved question is **DISMISSED AS MOOT**.  If Defendant wishes to file a Daubert challenge with respect to the expert's ability to testify at trial, they may do so at an appropriate time as a motion in limine.

national origin." 42 U.S.C. § 2000e-2(a). Defendant moves for summary judgment on Plaintiff's claim for discriminatory failure to promote, claiming that (1) Plaintiff never applied for a promotion and that (2) this claim is beyond the scope of Plaintiff's Equal Employment Opportunity Commission Charge.[8] (Doc. 99 at 2.) Plaintiff responds not that she applied for a promotion, but that she was simply entitled to be promoted back to the position from which she was demoted. (Doc. 107 at 2.)

To prevail on a failure to promote claim, the Plaintiff needs to show, among other things, that she "applied for the promotion." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004) (emphasis added). Plaintiff concedes that she was not interested in rising above the position she had prior to her demotion. (Doc. 107 at 2.) Instead, Plaintiff contends that once she was demoted in the "reorganization"[9] and the senior-most position in the Store was vacated, she was automatically entitled to be re-promoted to that position. This is just a different way of saying that Plaintiff should never

_____

[8] This argument is not addressed because the Court finds Defendant's first argument sufficient to win summary judgment on this claim.

[9] As noted above, the Court finds that, taking the facts in the light most favorable to Plaintiff, Plaintiff was not simply a casualty of a national reorganization of Pilot. See supra Background. To find differently would be to eviscerate discrimination law for demotion claims because any national store could simply "reorganize" a single branch whenever it wanted to discriminatorily demote an employee.

have been demoted. However, even if Plaintiff could prove she should not have been demoted, that is insufficient to support a claim for failure to promote. Further, Plaintiff offers no evidence that she ever _applied_ for a promotion, which is fatal to her claim.[10] Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on the failure to promote claim, which is **DISMISSED**.

B.    The Adverse Employment Action Claim

Title VII prohibits an employer from taking any adverse employment action against an employee on the basis of their sex. 42 U.S.C. § 2000e-2(a). Plaintiff claims that Defendant has violated Title VII by demoting her because she is a woman. Defendant has moved for summary judgment on this claim.

To prove her claims, Plaintiff may present either direct or circumstantial evidence.[11] When proving a claim with

_____

[10] The Eleventh Circuit Court of Appeals has carved out an exception to the requirement of application where the employer uses informal methods to fill a position. _Carmichael v. Birmingham Saw Works_, 738 F.2d 1126, 1133-34 (11th Cir. 1984). In such a case, the employee merely needs to show that the employer had a duty to consider him or her for the post. _Id._ Plaintiff has not contended that her situation falls into this exception; neither pointing to this case, nor pointing to any specific facts that would tend to show that Pilot had a duty to consider Ms. Purdee for the post. (Doc. 107.) Accordingly, the Court does not, _sua sponte_, consider whether Plaintiff was entitled to raise this claim under _Carmichael_. _Resolution Trust Corp. v. Dunmar Corp._, 43 F.3d 587, 599 (11th Cir. 1995).

[11] Direct evidence of discrimination is evidence that is "directly probative of an intent to discriminate." _See Young v. Gen. Foods_, 840 F.2d 825, 829 (11th Cir. 1988). "Only blatant

12

circumstantial evidence, the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden shifting framework applies. The burden begins with the plaintiff, who must prove a prima facie case of discrimination by a preponderance of the evidence. Id. at 802. If the plaintiff meets her burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Finally, if the defendant satisfies this burden, the plaintiff must demonstrate, by a preponderance of the evidence, that the defendant's proffered reasons are pretext for discrimination. Id. at 804. Summary judgment will be granted if the evidence, as a whole, is such that a jury could not find that plaintiff was a victim of discrimination. Sample v. Schuller Int'l, Inc., 836 F. Supp. 876, 882 (S.D. Ga. 1993).

1. The Prima Facie Case

A Plaintiff establishes a prima facie case for discriminatory adverse employment action by showing that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by, or treated less

---

comments in which it is obvious that the only intent possible is one of discrimination suffices to constitute direct evidence." See Trumbell v. Health Care & Ret. Corp. of Am., 756 F. Supp. 532, 537 (M.D. Fla. 1991), aff'd, 949 F.2d 1162 (11th Cir. 1991). Plaintiff never contends that she has direct evidence for count one; instead, she relies on circumstantial evidence to prove her prima facie case. (Doc. 107.)

favorably than, someone similarly situated outside of her protected class. See Tex. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 254 n.6 (citing McDonnell Douglas, 411 U.S. at 802). Demonstrating a prima facie case requires "that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Defendant contends that element two is not met because Plaintiff was neither demoted nor suffered an otherwise adverse employment action.[12] The Plaintiff responds that she was, in fact, demoted.

It is well established that a demotion is an adverse employment action under element two of a prima facie case. McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994). The only question before the Court, then, is whether there is a genuine issue of fact as to whether a demotion occurred. The Court answers that question in the affirmative.

First, there is evidence that Pilot's executives believed they were demoting Ms. Purdee. As Ms. Purdee stated during her deposition:

---

[12] Defendant does not challenge Plaintiff's ability to meet the other three elements of a prima facie case. (See Doc. 99.) This is because it is axiomatic that Plaintiff can show the other three elements. That is, Plaintiff meets element one because she is a woman; element three because her tenure at Pilot qualified her for her position; and element four because she was replaced by a man. (See Docs. 101 & 106.)

Q: Now, are these all employees that were aware of the situation?

A: They knew I had been demoted. Yes Ma'am.

Q: Who used the term demoted?

A: Mark Romano. I was demoted from senior general manager to a co-general manager.

Q: Did he tell you they were changing your title or did he say you were being demoted?

A: I'm being demoted to a co-general manager.

(Doc. 106, Ex. 3, Purdee Dep. at 228.) Ms. Purdee also stated that Mr. Ross told her she was being demoted. (Id. at 245.) That two Pilot executives told Ms. Purdee she was being demoted is significant. Further, Mr. Knorr, who took Ms. Purdee's position, testified that Ms. Purdee was, in his opinion, demoted. (Doc. 106, Ex. 4, Knorr Dep. at 180.) Moreover, Mr. Web, the lead maintenance man at the Store, was told that all business concerning the Store should be reported to Mr. Knorr, not Ms. Purdee, as Mr. Knorr was now the senior general manager. (Doc. 106, Ex. 15, Web Aff. ¶¶ 3, 7.)

The changes to Plaintiff's job also undermine Defendant's position that Plaintiff was not demoted. First, Plaintiff lost the ultimate decision making authority for the Store to Mr. Knorr. (Doc. 106, Ex. 7, Romano Dep. at 44.) Second, Ms. Purdee was told that her general partnership stake would be taken away in the near future. (Doc. 101, Ex. 3, Purdee Dep. at

207.)  Third, employees were told to report to Mr. Knorr, instead of Ms. Purdee, on issues of store business.  (Doc. 106, Ex. 15, Web Aff. ¶ 7.)  Fourth, Mr. Knorr took over Ms. Purdee's previous duty of scheduling employees.  (Id. ¶ 5.)  Fifth, Ms. Purdee was relegated to the performance of duties normally done by hourly personnel.  (Id. ¶ 6.)  These changes are all indicative of a demotion or otherwise adverse employment action. See generally, Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 828-29 (11th Cir. 2000) (finding reductions in pay, prestige, and responsibility were indications of an adverse employment action, regardless of whether the employer considered that action a demotion).

This evidence only scratches at the surface of the evidence suggesting that Ms. Purdee was, in fact, demoted.[13]  The Court

---

[13] As a secondary argument, Pilot contends that Plaintiff cannot be considered demoted because her position was effectively eliminated, and invites the Court to apply Baas v. Guess?, Inc., 54 F. Supp. 2d 1105 (S.D. Ala. 1999), to this case.  The Court declines the invitation; Baas is not even remotely similar to the present case.  In Baas, the plaintiff admitted that her job was eliminated as part of a general corporation-wide reorganization, that she was a subpar employee, and that she was openly opposed to the actions of the new management regime that had taken over the chain.  Id. at 1115.  In Baas, the plaintiff even admitted that she was not terminated for being a woman. Id. at 1112.  Not surprisingly, the Baas Court granted summary judgment based on the plaintiff's admissions.  Here, there are no similar admissions to rely on.  In fact, Plaintiff contends the exact opposite of that which was admitted in Baas. Plaintiff contends that only her Store was "reorganized," claims that she was a quality employee, admits to no generalized conflicts with Pilot management, and maintains steadfastly that

finds that because of this evidence, element two of Plaintiff's prima facie case is satisfied for the purposes of summary judgment. As noted above, the other three elements are also met. See supra n.12. Accordingly, Plaintiff's burden of making a prima facie case is satisfied.

## 2. Legitimate Non-Discriminatory Reason

As the Plaintiff has established a prima facie case, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the Plaintiff's demotion. Wilson, 376 F.3d at 1089-90. To do so, the Defendant must "clearly set forth, through the introduction of admissible evidence, the reasons" for the demotion. Burdine, 450 U.S. at 255. However, the Defendant need not prove "that it was actually motivated by the proffered reasons," the Defendant only needs to come forth with sufficient evidence of a permissible motive to create an issue of fact. Id. at 254-56.

Throughout this litigation, Defendant has offered various reasons for both the decision not to promote Ms. Purdee and the decision to demote her, never informing the Court to which decision each justification applies.[14] (Doc. 122.) Defendant's

---

she was fired for being a woman. The vast factual differences between this case and Baas render Defendant's argument wholly specious.

[14] This Court has already dismissed Plaintiff's failure to promote claim, so the Court only considers whether the reasons justify Ms. Purdee's demotion.

most recent statement of its reasons clarifies its position, narrowing the justifications to "Plaintiff's performance issues and Mr. Knorr's qualifications as compared with [the] Plaintiff."[15] (Doc. 122 at 15.)

The former reason, Ms. Purdee's job performance, is supported by depositions and affidavits in the record. (See Doc. 101.) Deficient job performance is plainly a legitimate reason for a demotion or termination. Damon v. Fleming Supermarkets of Fl., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). Accordingly, this justification satisfies Defendant's burden.

The latter reason, however, is problematic.[16] Defendant contends that its actions can be justified by comparing Mr. Knorr's qualifications to Ms. Purdee's. (Doc. 122 at 18.)

_____

[15] For the purposes of deciding this Motion, the Court will hold Defendant to this statement. Although Defendant alludes to other potential justifications in other contexts, they are not asserted as justification for these decisions, but rather as reasons why Plaintiff cannot satisfy her burden at step one or three of the analysis. (See Doc. 122 at 14-22.)

[16] Defendant is advised, in the future, to take the time to make sure that the law it puts before this Court is current. Defendant has told this Court that a disparity in qualifications must be "so apparent as virtually to jump off the page and slap you in the face," to fail to justify an employment decision. (Doc. 122 at 18.) The Supreme Court has explicitly overruled this standard. Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006) ("The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications. . . . It suffices to say here that some formulation other than the test the Court of Appeals articulated in this case would better ensure that trial courts reach consistent results.")

While this justification is sufficient to validate a decision not to promote, it fails to justify a demotion. This Court has already granted summary judgment on Plaintiff's failure to promote claim, rendering this case only about Pilot's choice to demote Ms. Purdee. Defendant has not provided the Court with any law[17] supporting the contention that a demotion can be justified by an employer's ability to find a person who is qualified for the position of the demoted employee.[18] Further, this Court's independent review has failed to find any case where a third party's qualifications were allowed to justify a demotion or termination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993) (violation of workplace rules considered a legitimate, nondiscriminatory reason), Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1277-78 (11th Cir. 2008) (violation of workplace rules considered a legitimate, nondiscriminatory

---

[17] The cases which Defendant cites in its briefs, Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir. 1997) (failure to promote white employee), Wilson, 376 F.3d 1079 (failure to promote female), Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001) (failure to promote white employees), are all cases about failures to promote and are, therefore, inapposite. (Doc. 122 at 18.)

[18] While evidence that a demoted party was replaced by an unqualified individual outside of the protected class is relevant to proving pretext, Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1032 (9th Cir. 2006), it does not follow that the reverse is true. That is, Defendant cannot justify its decision to demote an otherwise qualified employee on the basis that somewhere in the workforce they can find another employee who is, like the demoted individual, qualified for the position. To find otherwise would be to effectively eliminate step two of the McDonnell Douglas framework.

reason for a demotion), <u>Vincent v. Brewer Co.</u>, 514 F.3d 489, 497 (6th Cir. 2007) (violation of workplace rules and company-wide lay-offs considered valid reasons for a termination), <u>Berquist v. Wash. Mut. Bank</u>, 500 F.3d 344, 357 (5th Cir. 2007) (company-wide reorganization considered a valid reason for termination). Accordingly, the Court finds that this reason cannot satisfy Defendant's burden at step two.[19]

### 3. Pretext

Once the defendant meets their burden at step two, the burden shifts back to the plaintiff to show that the proffered reasons are pretextual. <u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305, 1308 (11th Cir. 2007) (citing <u>Chapman v. Al Transport</u>, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)). This can be done either by rebutting the employer's reasons "head-on" or by persuading the Court "'that a discriminatory reason more likely motivated the employer.'" <u>Sweat v. Miller Brewing Co.</u>, 708 F.2d 655, 656 (11th Cir. 1983) (quoting

---

[19] The Court notes that even if Mr. Knorr's qualifications were a valid, nondiscriminatory reason for demoting Ms. Purdee, Plaintiff has offered ample evidence that it is pretextual. First, there is evidence that Mr. Knorr was not qualified for his position. (Doc. 106, Ex. 10, Wallis Aff. ¶¶ 14-15.) Second, despite Mr. Knorr's various qualifications and experience, it is hard to imagine that he was so much more qualified than Ms. Purdee that Pilot felt compelled to demote her. Indeed, Ms. Purdee's experience included three years as the successful senior general manager of this specific Store, and ten total years of experience in Pilot management.

Burdine, 450 U.S. at 256).[20]   A plaintiff meets this burden at the summary judgment stage "by introducing evidence that could form the basis for a finding of facts, which, when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext." Combs, 106 F.3d at 1530.   Moreover, "'when dealing with employment discrimination cases, which usually necessarily involves examining motive and intent . . . granting of summary judgment is especially questionable.'" Sweat, 708 F.2d at 657 (quoting Hayden v. First Nat'l Bank, 595 F.2d 994, 997 (5th Cir. 1979)).   And, "[a] defendant who puts forward only reasons that are subject to reasonable disbelief in light of the evidence faces having its true motive determined by a jury." Combs, 106 F.3d at 1537.

As Mr. Knorr's qualifications are irrelevant to the demotion claim, the Court considers only whether the proffered justification of poor performance is potentially pretextual. See supra Part II.B.2.   In this regard, "'[t]he inquiry into pretext centers upon the employer's beliefs, not the employee's

---

[20] Either direct evidence or "circumstantial evidence in the form of comparative or statistical evidence" can be used to meet the plaintiff's burden.   Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir. 1989) (citing Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir. 1985)).   While Plaintiff has offered statistical evidence in this case, the Court need not consider it because there is ample other evidence of pretext.

own perceptions of his performance.'" <u>Rioux</u>, 520 F.3d at 1277-78 (quoting <u>Holifield</u>, 115 F.3d at 1565).

The Court finds that Plaintiff has met Defendant's reason head-on and rebutted it. First, Ms. Purdee was never warned or reprimanded about her deficient performance.[21] Obviously, where a decision to demote or terminate is based on poor job performance, a defendant's failure to ever express these concerns to the plaintiff is indicative of pretext. <u>See</u> <u>Sweat</u>, 708 F.3d at 657. Further, Pilot's own documentation undermines this proffered reason, showing positive job performance by Ms. Purdee at the time of the demotion.[22] Indeed, the statistics for the Store in 2005 reflect that the Store was performing better than the regional average in many ways, including the following: staff turnover rates (<u>Compare</u> Doc. 125, Ex. 2, D0504, <u>with</u> Doc. 125, Ex. 5, D02058), gross profits (<u>Compare</u> Doc. 125, Ex. 2, D0505, <u>with</u> Doc. 125, Ex. 5, D02061), customer service as

---

[21] Defendant contends that Ms. Purdee was warned of a need to improve, but cites only to the depositions and declarations of Pilot executives. (Doc. 122 at 21.) Plaintiff has opposed this through citations of her own deposition and the Affidavit of another manager. (Doc. 106, Ex. 3, Purdee Dep. at 254; Doc. 106, Ex. 9, Crawford Aff. ¶ 33.) Accordingly, the Court finds a question of fact with respect to this point. However, when taking the facts in the light most favorable to the Plaintiff—as the Court must—the Court must assume that no warning was given.
[22] To determine performance at the time of the demotion, the Court looks to the 2005 statistics for the Store. While this reflects both Mr. Knorr's and Ms. Purdee's time as general manager, the statistics mostly reflect Ms. Purdee's performance as it is undisputed that Ms. Purdee was not demoted until at least October 18, 2005. (Doc. 106, Ex. 3, Purdee Dep. at 201.)

measured by mystery stop (Compare Doc. 125, Ex. 2, D0505, with Doc. 125, Ex. 5, D02061), customer service as measured by mystery driver (Compare Doc. 125, Ex. 2, D0505, with Doc. 125, Ex. 5, D02061), and net operating cost (Compare Doc. 125, Ex. 2, D0506, with Doc. 125, Ex. 5, D02063). The fact that the Store was outperforming many other Pilot stores is more than sufficient to form the basis for a finding of fact by a jury that Pilot's proffered reason is pretextual.[23]

In light of this evidence, the Court finds that Plaintiff has carried her burden of showing pretext. Therefore, Defendant's Motion for Summary Judgment on this claim is **DENIED**.

## III. Count II: Improper Discharge Claim

Plaintiff has made a claim for discriminatory treatment by improper discharge under Title VII, 42 U.S.C. §§ 2000e et seq. Defendant moves for summary judgment on this claim. Plaintiff has not responded. (See Doc. 107.)

Plaintiff's brief is put forward in two sections, I and II, the first pertaining the disparate treatment claims and the second to the retaliation claim. (Doc. 107.) Plaintiff only

---

[23] Plaintiff has offered further factual rebuttals to the job performance claim, some of which suggest that any deficiencies at the Store were intentionally created by Pilot executives. For example, Store 71 had a severe management shortage until Ms. Purdee left, at which point Pilot promptly filled the vacant managerial positions. (Doc. 125, Ex. 3, D01626.) Also, for an unknown reason, thousands of dollars in rent payments were shifted from the corporate profit/loss statement to Ms. Purdee's profit/loss statement in 2005. (Doc. 125, Ex. 5, D02313-14.)

mentions the question of whether Ms. Purdee was discharged in the section of her brief that specifically refers to the retaliation claim. (Doc. 107 at 23-26 ("A Plaintiff claiming retaliatory discharge may succeed in establishing retaliatory discharge . . . .").) The question is ignored in the portion of her brief which refers to her Title VII claims.[24] (Doc. 107 at 2-18.) In its Motion, Defendant has met its burden under Celotex by informing the Court of the basis for the Motion and pointing to applicable citations in the Record. 477 U.S. at 323. By failing to respond, Plaintiff has not met her burden of response. Clark, 929 F.2d at 608. Accordingly, the Motion for Summary Judgment is **GRANTED** and this claim is **DISMISSED**.

## IV. Count III: The Retaliation Claim

Plaintiff claims that she was retaliated against when Pilot discharged her due to her complaint of gender discrimination.

---

[24] Because Title VII retaliation claims and non-retaliatory Title VII claims are not the same, this Court declines to attempt to take various sections of Plaintiff's brief and mold them together into a response in defense of count two of the Complaint. See Crawford v. Carroll, 529 F.3d 961 (11th Cir. 2008) (discussing different standards for Title VII retaliation claims and non-retaliatory Title VII claims). Even if the Court were able to rearrange Plaintiff's brief to craft a satisfactory response to this Motion, it would be inappropriate to do so. Baker v. Norman, 651 F.2d 1107, 1129 n.26 (5th Cir. 1981) ("a district court judge is neither required nor permitted to become counsel for any party").

Defendant moves for summary judgment on this claim, contending that Plaintiff cannot make out a prima facie case.[25]

To make out a prima facie case for Title VII retaliation, a Plaintiff must show that "'(1) [s]he engaged in . . . statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the two events.'" Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 715 (11th Cir. 2002) (quoting Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000)). Defendant does not contended that Plaintiff cannot prove element one. (See Docs. 99 & 161.) Accordingly, the Court considers only whether elements two and three are met.

A.  Adverse Employment Action

Defendant contends that Plaintiff was not fired, but rather voluntarily quit, and, therefore, lacks an adverse employment action of which to complain.[26]  (Doc. 99 at 15-16.)  Plaintiff responds that she never quit her job and instead was fired or constructively discharged.  (Doc 107 at 18-25.)  The Court need not consider the constructive discharge question because there

---

[25] The McDonnell Douglas burden shifting framework applies to retaliation claims. Goldsmith v. City of Atmore, 996 F.2d 1155, 1162-63 (11th Cir. 1993). However, Defendant neither contends that it had a valid, nondiscriminatory reason for firing Ms. Purdee; nor that Plaintiff could not show such a reason to be pretextual. (See Docs. 99 & 161.)

[26] Defendant concedes that termination is an adverse employment action. (Doc. 161 at 6.)

is sufficient evidence that Ms. Purdee was fired to satisfy element two for the purposes of summary judgment.

First, despite a blatant issue of material fact created by Defendant's own witnesses, Defendant repeatedly makes the conclusory statement that Ms. Purdee quit on November 2, 2005. (Docs. 99 & 161.) There are at least three people who have knowledge of what happened on November 2: Ms. Purdee, Dani Noel (Pilot's lead auditor), and Mr. Venable. Ms. Purdee testified that she did not quit that day, but was sent home by Mr. Venable. (Doc. 106, Ex. 3, Purdee Dep. at 244.) Mr. Venable recounts the events of the day as follows: "I proceeded back to the office. I leaned in the office door. Dani Noel, the lead auditor was sitting at the computer working on the audit. And Mada [Purdee] came in . . . phrasing something to the effect of I can't take this anymore, I'm resigning, I quit." (Doc. 101, Ex. 5, Venable Dep. at 315.) Mr. Venable also recounted later escorting Ms. Purdee to her office to gather her things. (Id. at 319.) Thus, according to Mr. Venable's account, Ms. Noel should have heard Ms. Purdee resign. However, while Ms. Noel's Declaration mentions this exchange between Mr. Venable and Ms. Purdee, it does not say anything about Ms. Purdee resigning during it. Instead, according to Ms. Noel, "Ms. Purdee began yelling at Mr. Venable stating that he did not know what was going on at the location. Ms. Purdee then turned and walked out

of the office." (Doc. 101, Ex. 10, Noel Decl. ¶ 8.) Moreover, in her deposition, Ms. Noel never mentions Mr. Venable escorting Ms. Purdee to her office. (Doc. 101, Ex. 11, Noel Dep. at 169-171.) Thus, the Court is given three inconsistent accounts of the events of November 2, two of which are by Pilot's own employees. Accordingly, the Court finds an issue of fact as to the events of November 2, 2005.

Defendant's attorneys spend much more effort advancing the theory that Ms. Purdee resigned on November 11, 2005. They argue that Ms. Purdee openly rejected an offer by Mr. Parent to return to work during their phone call that day, constituting a resignation. (Doc. 99 at 16.) However, Defendant's own client has undermined this argument. Mr. Parent remembers the phone call as follows:

> Q: Do you remember Ms. Purdee quitting or telling you she was not going to continue to work for Pilot?
>
> A: I remember Mark Romano telling me she had quit and left the company.
>
> Q: Did she quit to you?
>
> A: I'm not sure I understand.
>
> Q: You don't remember her quitting in her conversation with you, sir?
>
> A: No.

(Doc. 106, Ex. 14, Parent Dep. at 58-59.)    Mr. Romano corroborates this understanding.    That is, Mr. Romano remembered the situation as follows:

> Q: . . .    It is my understanding it was your impression from Mr. Venable that Ms. Purdee quit on November 2nd, correct?
>
> A: That is correct.
>
> . . .
>
> Q: . . .    I mean it was your understanding that she was willing to return as a co-travel center general manager, correct?
>
> A: From what I recall, yes.

(Doc. 101, Ex. 21, Romano Dep. at 56-58.)    Thus, the contention that Ms. Purdee resigned her position to Mr. Parent on the phone is undercut by the testimony of Defendant's own executives.

Ignoring the contradiction between their argument and the testimony of their client's executives, defense counsel bases their entire account on a gloss they have put onto Ms. Purdee's testimony.    Ms. Purdee testified as follows:

> Q: And tell me about the [November 11, 2005 conversation with Ken Parent].
>
> A: I went over the same story with him that I did with Mr. Ross. . . .    He told me that I could come back to the unit but I would have to come back to the unit as a co-manager and I would stick to the schedule that was provided for me by my director, which would be Dave Knorr.
>
> . . .

Q: So when Mr. Parent told you that you could come back as a co-manager and work that schedule you chose not to do that?

A: Yes.

. . .

Q: So effective the fifth or sixth, [you said] I'm not doing this co-Travel Center general manager anymore?

A: He said that if you don't want to come back as the co-general manager, then there is no position for you.

(Doc. 101, Ex. 3, Purdee Dep. at 244-47.) Although Defendant's spin on this testimony is possible, the testimony bears more than one understanding. It could also be understood that Ms. Purdee was offered the opportunity to return to work in a statement—as in "if you don't want to come back to work as the co-general manager, then there is no position for you,"—and Ms. Purdee simply failed to accept or decline that invitation on the phone. The latter understanding is supported by subsequent events. Indeed, the same day as her phone conversation with Mr. Parent, Ms. Purdee informed Pilot that she would accept the demotion. (Doc. 71.) This suggests that Ms. Purdee considered the conversation to have left her with an open offer. Mr. Parent's recollection of the conversation also supports the latter understanding; Mr. Parent did not remember "Ms. Purdee quitting or telling [him] she was not going to continue to work for Pilot." (Doc. 106, Ex. 14, Parent Dep. at 58-59 (emphasis added).) The Court draws its inferences on summary judgment in

favor of the non-moving party and, so, while Defendant's interpretation of Ms. Purdee's testimony is plausible, Defendant is currently not entitled to it. There is an issue of fact as to how Ms. Purdee's employment ended, and the Court finds that Plaintiff has shown that element two of the prima facie case is met for the purposes of summary judgment.

B.    Casual Connection Between the Two Events

Defendant's second argument is that element three of the prima facie case is not met because there can be no casual connection between the protected activity and the firing as "Plaintiff Did Not Complain of Discrimination Prior to Voluntarily Resigning." (Doc. 99 at 15.) Defendant spends less than half a page backing this argument, which is so specious that it bears almost no discussion.[27] Ms. Purdee has testified that she complained of discrimination to Mr. Ross several hours before the November 2, 2005 altercation with Mr. Venable, during which Defendant contends she resigned. (Doc. 106, Ex. 3, Purdee Dep. at 242.) Moreover, Mr. Venable was aware of the discrimination complaint because Ms. Purdee informed him of it. (Id.) Pilot's auditor, Dani Noel, confirms that Mr. Ross was contacted prior to the altercation with Mr. Venable, as she confirms that Ms. Purdee informed Mr. Venable of the call to Mr.

---

[27] The Court further notes that Defendant appears to have dropped this argument on re-briefing. (See Doc. 161.)

Ross.[28]   (Doc. 101, Ex. 11, Noel Dep. at 169-70.)   This wholly

undercuts  any  argument  by  Defendant  in  this  regard.[29]

Accordingly, this is not grounds for summary judgment either.

The Court finds that Plaintiff has made out a prima facie

case with respect to the retaliation claim.   Thus, the burden

shifts to Defendant to produce a legitimate, nondiscriminatory

reason for the termination.   Defendant has not attempted to do

so.   (Doc. 99.)   Accordingly, Defendant has failed to meet their

burden, and, therefore, the Motion for Summary Judgment with

respect to this claim is **DENIED**.

V.   <u>Count IV: Tortuous Interference with a Contract</u>

---

[28] Ms. Noel does not remember Ms. Purdee mentioning that the call
to Mr. Ross was about discrimination, but there is no suggestion
in this case that Ms. Purdee called Mr. Ross about anything
other than discrimination the morning of November 2.   (Doc 101,
Ex. 11, Noel Dep. at 169-170.)   Ms. Noel's testimony establishes
that the call to Mr. Ross occurred before the events with Mr.
Venable, despite the fact that she does not know the contents of
the call.

[29] Further, the Court finds that Plaintiff has met her burden of
showing a causal connection under element three of the prima
facie case.   To show this element, the Plaintiff need only
"prove that the protected activity and the negative employment
action are not completely unrelated."   <u>Coutu v. Martin County
Bd. of County Comm'rs</u>, 47 F.3d 1068, 1074 (11th Cir. 1995).   One
way to show this is the temporal relationship of the protected
activity and the firing.   <u>Donnellon v. Fruehauf Corp.</u>, 794 F.2d
598, 601 (11th Cir. 1986) (finding that one month between
protected activity and firing satisfied this element).   Here,
construing the facts in the light most favorable to Plaintiff,
she complained to Mr. Ross the morning of November 2, told Mr.
Venable of her complaint several hours later, and was fired
within hours of telling Mr. Venable of the protected activity.
The temporal connection between the two events could not be
stronger—Plaintiff has carried her burden here.

Plaintiff has stated a claim for tortuous interference with a contract. (Doc. 31 ¶¶ 115-16.) Defendant moves for summary judgment on this claim, arguing that Plaintiff has no proof to support it. (Doc. 99 at 17.) Plaintiff has withdrawn this claim, conceding that Defendant is entitled to summary judgment. (Doc. 107 at 2.) Accordingly, the Court **GRANTS** the Motion for Summary Judgment on this claim, which is **DISMISSED**.

## CONCLUSION

This Court has considered Defendant's Motion for Summary Judgment (Doc. 98) and the accompanying Evidentiary Objections (Docs. 120, 121 & 123). After careful consideration, and for the above reasons, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**. The following claims are **DISMISSED**: (1) failure to promote, (2) improper discharge, and (3) tortuous interference with a contract. The following claims **REMAIN**: (1) discriminatory demotion and (2) retaliatory discharge.

SO ORDERED this *28th* day of March, 2009.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA